TOWN OF JACKSONVILLE v. RAGSDALE.
(No. 1926.)

(Court of Civil Appeals of Texas. Texarkana. April 15, 1918.)

1. WATERS AND WATER COURSES ⬤191—MUNICIPAL WATER SUPPLY—RIGHTS OF WAY—INJURY FROM MAINTENANCE.
Under deed to right of way for water pipe line to supply a city, giving right to take up, repair, and replace the pipe line laid under the waters of a pond on the grantor's land, the city was liable for damages resulting from unnecessarily draining the pond entirely of its waters, when the pipe line could have been repaired without draining all the waters and killing the fish therein.

2. WATERS AND WATER COURSES ⬤197—WATER SUPPLY—RIGHTS OF WAY—INJURY FROM MAINTENANCE—QUESTIONS FOR JURY.
In action by grantor of right of way for municipal water supply pipe line for damages for draining all the water and killing the fish, evidence held to present a jury question whether draining all the water was necessary in repairing the pipe line.

3. FRAUDS, STATUTE OF ⬤60(2)—CONTRACTS—USE OF POND.
Agreement between railroad company and owner of land that the landowner might use a pond partially situated on their lands to stock fish and rent boats for fishing is not necessarily required by law to be in writing in order to be effective between the parties.

4. APPEAL AND ERROR ⬤1066—HARMLESS ERROR—ABSTRACT INSTRUCTION.
An instruction containing a mere abstract statement as to which the jury were not asked to make a finding, and which statement did not pertain to the issue submitted, was not prejudicial.

Appeal from District Court, Cherokee County.

Action by J. E. Ragsdale against the Town of Jacksonville. Judgment for plaintiff, and defendant appeals. Affirmed.

The town of Jacksonville is incorporated under the general laws of the state, and has established and operates a water supply system. The pipe line extends southward from the reservoir in part across the land of the appellee and across the right of way of the International & Great Northern Railway Company. The appellee, as well as the railway company, conveyed to the town "the right and privilege to extend the pipe line across the land (giving description thereof)." Each conveyance has the following provision:

"And said town of Jacksonville shall have access to said pipe line at all times for the purpose of digging down to said pipe, repairing the same or taking up and replacing the same, provided that when such repairs are made the trenches are to be refilled and put in proper condition."

By the construction of a dam and the use of the railway embankment a lake is formed on the lands of the appellee and the railway company. The spillway is of concrete. The main pipe line runs under the water of the pond, but above the surface of the ground and not under the ground. A serious break occurred in the pipe beneath the water of the pond, and it became necessary to repair the line at that place in order to furnish water for the use of the people of the town. The water superintendent, in the endeavor to make the needed repairs, had the spillway of the pond knocked out and the lake drained of all its water. Appellee had the pond stocked with fish, and had five rowboats on the pond which he rented for profit. As a result of the draining off of the waters of the pond the fish were all destroyed, and the boats were left hanging on the banks exposed, and became full of seams and ruined for further use. There is no proof of express consent on the part of the appellee to drain the waters from the lake. He says that he did not consent that they be drained off; and there is testimony on the part of the appellee as follows:

"I saw the lake after all of the water was out, and I could see the pipe then, and it was above the surface of the ground. It was not under the ground in the lake, and they could have let the water down to it and fixed it without letting all of the water out of the pond. I saw the pipe exposed there for a good while,

for the lake was several months filling up again. I know from what I saw after the water was out of the pond that they could have let just part of it out and have fixed that pipe without letting all of the water out."

The appellee brought the suit for damages, claiming that the town had negligently drained all the waters of the lake, causing him to suffer the loss of all the fish therein and of the pleasure boats. The court submitted the case to the jury on the single issue of the amount of damages. And the court entered judgment for the appellee in the sum, as found by the jury, of $400. There is involved in the judgment of the court a finding of negligence on the part of the town authorities in draining all the water from the lake, proximately causing damage to the plaintiff.

Lee G. Carter, of Jacksonville, for appellant. C. H. Martin, of Jacksonville, and Norman, Shook & Gibson, of Rusk, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant insists that the court erred in not giving, as requested, a peremptory instruction to the jury to return a verdict in its favor. The right of way deed from the appellee to the town of Jacksonville expressly gave the right to take up, repair, and replace the pipe line laid under the waters of the pond on the appellee's land; and this authority so given may include the power to the city to drain the waters of the pond so far as may be reasonably required to be done to repair or replace the pipe line as needed. But the recovery allowed in this case is not for a diversion or loss of water without compensation. The point at which liability in the case begins and must entirely rest is the alleged tort on the part of the town authorities in unnecessarily draining all the waters from the pond, resulting in the destruction of the fish as well as doing other peculiar damage to the appellee. The particular allegation in the petition is:

"Without plaintiff's consent or knowledge the said defendant deliberately and negligently broke the dam and spillway and other impounding devices in such manner as to draw off all the water from the said pond, leaving the same entirely dry and thereby destroying plaintiff's boats of the reasonable value of $100, and destroying his fish and the pond, and that same has never since been as valuable and suitable as a fishing place and fishpond or for bathing or boating; that by the exercise of ordinary care defendant could have repaired said leak or broken place in the line without injury to the plaintiff, but negligently failed and refused to exercise care for that purpose."

[2] The fish and the boats in the lake belonged exclusively to the appellee. And therefore the question was, Could the break in the pipe line have been readily fixed, as appellee claims and testified, "without letting all the water out of the pond"? And in view of the testimony it was a jury question of whether or not the draining of all the water from the pond was properly required under the circumstances. The court, it is concluded, did not err in refusing the peremptory instruction. The court did not refer the question to the jury, but rather himself decided, as involved in the judgment, that the appellant in point of fact negligently drained all the water from the pond; but no complaint is based on appeal upon the court's action in this particular respect, and we do not review that question.

The sixth and seventh assignments of error should be, it is concluded, overruled. For there is evidence authorizing the court to submit to the jury for decision the amount of damages sustained by the appellee as a proximate result of the negligent draining of the waters from the pond. Any particular item of damages was not specially challenged in the objection or by assignment of error.

[3] An agreement between appellee and the railway company that the appellee could use the pond for boating purposes, could keep fish therein, is not a matter necessarily required by law to be in writing to be effective between the parties. And the appellee testified outside of the agreement that he was, as alleged in his petition, the owner of the fish and the boats in the pond. Therefore the first, second, and third assignments do not, it is thought, present such error as requires a reversal of the judgment. Rule 62a (149 S. W. x).

[4] The instruction complained of in the eighth assignment of error is a mere abstract statement, and the jury were not asked by the court to make a finding thereon; neither did such statement pertain to the issue that was submitted to the jury. There is no such injury resulting as warrants a reversal; therefore the assignment is overruled.

The judgment is affirmed.